SIERRA GLASS & MIRROR, Appellant, v. VIKING INDUSTRIES, INC., Respondent.

No. 20671

March 28, 1991                                      808 P.2d 512

[Rehearing denied June 27, 1991]

*Jones, Jones, Close & Brown* and *Kirk R. Harrison,* Las Vegas, for Appellant.

*Morton & McCullough, Ltd.* and *Eric Dobberstein,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Respondent Viking Industries, Inc. (Viking) is an Oregon

corporation which manufactures and sells windows to buyers in thirty different states. Viking brought a breach of contract action against Sierra Glass & Mirror (Sierra), a Nevada company, when Sierra refused to pay for windows delivered. A bench trial resulted in a $53,529.00 verdict in which the court awarded Viking the contract price of $31,958.08, minus the salvage value that Viking received, plus shipping costs, interest, and attorney's fees.

Throughout the course of the trial, Sierra asserted that Viking was not entitled to bring this action in a Nevada court because it is a foreign corporation doing business in Nevada and has not complied with NRS 80.210(1)(b).[1] This statute precludes foreign corporations doing business in Nevada from commencing an action in Nevada courts if that corporation has not filed qualifying documents with the Secretary of State. Whether Viking was in fact "doing business in Nevada" is the sole issue that Sierra raised on appeal.

Viking's associations with Nevada are as follows: Its total sales volume amounts to approximately $20,000,000 in the thirty states in which it conducts business. Of that amount, about $3,000,000 is from sales into Nevada. At the time the cause of action arose, Viking had one sales representative, Linda Aronsohn, who worked in Nevada. She resided in Las Vegas and spent two weeks a month calling on customers and visiting sales prospects in Reno and Las Vegas. Viking maintained a listed telephone in Las Vegas which operated out of Aronsohn's home. Nevada customers would place orders through Aronsohn, who would then phone the orders and send checks to Portland.

Viking asserts that its associations with Nevada were purely interstate, and therefore were subject to federal regulation under the Commerce Clause. To minimize restrictions on the flow of interstate commerce, states may not impose their filing statutes on companies who send salesmen into the forum state to promote interstate trade. *Robbins v. Shelby County Taxing District*, 120 U.S. 489 (1886). However, when the quantity of business in the forum state becomes substantial, the nature of the business can be deemed intrastate, subjecting the company to the forum state's

---

[1]NRS 80.210(1)(b) provides in pertinent part:

  1. Every corporation which fails or neglects to comply with the provisions of NRS 80.010 to 80.040, inclusive:

  . . . .

  (b) . . . may not commence or maintain any action or proceeding in any court of this state until it has fully complied with the provisions of NRS 80.010 to 80.040, inclusive.

regulations of foreign corporations. Eli Lilly & Co. v. Sav-On Drugs, 366 U.S. 276 (1961). Therefore, the test to determine if a company is doing business in a state is two pronged. Courts look first to the nature of the company's business functions in the forum state, and then to the quantity of business conducted in the forum state.

In *Eli Lilly,* the court found that the out of state company was doing business in the state because (1) it maintained an office and telephone in the state, (2) the lessor of the office was the company's employee, (3) the office had a secretary and eighteen other salaried employees, many of whom resided in the forum state, (4) these employees did promotional and informational work and received orders for plaintiff's products, and (5) even though the company only sold to wholesalers, its employees promoted the products by contacting retailers who buy the products intrastate. *Id.* at 279-281. Viking's activities in Nevada at the time this suit arose were not as pervasive as the factors listed in *Eli Lilly.* Instead, its conduct was a cross between purely interstate transactions of a company that takes orders from the forum state and fills them through its operations in the foreign state, and the intrastate nature of a company that has an actual employee soliciting a large quantity of business within the forum state. Hence, Viking's activities are interstate, but substantial, and therefore Viking sits right on the fence between doing business and not doing business in Nevada.

The U.S. Supreme Court determined that states may impose their regulations on interstate commerce so long as the state legislation does not express hostility toward interstate commerce in violation of the Commerce Clause. Union Brokerage Co. v. Jensen, 322 U.S. 202, 210 (1944). In *Jensen,* a North Dakota customhouse brokerage business brought a breach of fiduciary duty action in a Minnesota court. The Court found that the North Dakota corporation had localized its business in Minnesota by buying materials, offering services, and having a wide variety of dealings with the people in communities within the forum. *Id.* at 208. Therefore, Minnesota could subject the company to its own regulations regarding foreign corporations without offense to the Commerce Clause. *Id.* at 212.

However, state statutes do violate the Commerce Clause when applied to defeat a transaction which is part of interstate commerce. Allenberg Cotton v. Pullman, 419 U.S. 20 (1974). In *Allenberg,* a Tennessee cotton merchant brought suit against a Mississippi cotton grower who breached a contract. The Court found that even though the merchant conducted regular business

in Mississippi and had a continuous supply of inventory stored there, the nature of the merchant's business was interstate because he did not sell the cotton within Mississippi. A regulatory statute cannot defeat a "transaction which, though having intrastate aspects, was in fact 'a part of interstate commerce.'" *Id.* at 30 (citing Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 292 (1921)).

Many state courts have followed the *Allenberg* lead, and determined that something more than continuous business in the forum state is necessary before the state may subject foreign corporations to its statutes. North Alabama Marine v. Sea Ray Boats, 533 So.2d 598 (Ala. 1988) (in-state activities of advertising, maintenance, and overseeing performance of contracts were incidental to interstate commerce and did not bar foreign corporation from Alabama courts); Panhandle Agri-Service Inc. v. Becker, 644 P.2d 413 (Kan. 1982) (buyer who traveled in and out of state to fulfill contracts was not doing business in the state); Carolina Components v. Brown Wholesale Co., 250 S.E.2d 332 (S.C. 1978) (shipping merchandise to fill orders solicited by a sales representative does not subject corporation to forum state regulations). The general consensus of state courts is that whether a company is doing business must be determined on a case-by-case basis. Courts must consider factors such as the quantity of business, the permanence and number of employees, and the presence of a company office, but the main question, as explained in *Jensen,* is whether the company has *localized* its business in the forum state. *Jensen,* 322 U.S. at 210. In this case, Viking conducted a large volume of interstate transactions with Nevada, but it did not maintain an office here, and it only had one agent soliciting contracts in Reno and in Las Vegas. Therefore, although Viking conducts continuous business here, it has not localized itself into the Nevada community.

Sierra asserts that Nevada law has stricter filing requirements than many other states. NRS 80.015,[2] enacted in 1989, defines "not doing business" quite narrowly by actually listing activities for which foreign companies need not file. The statute states that

---

[2]NRS 80.015. Activities that do not constitute doing business in Nevada. For the purposes of this chapter, . . . the activities that do not constitute doing business in this state include:
   1. Making sales through independent contractors;
   2. Soliciting or receiving orders outside of this state through or in response to letters, circulars, catalogs or other forms of advertising, accepting those orders outside of this state and filling them by shipping goods into this state; and
   3. Isolated transactions completed within 30 days and not a part of a series of similar transactions.

activities that do not constitute doing business in Nevada include sales through independent contractors, advertising in and shipping goods to Nevada, and isolated transactions completed within thirty days. Sierra asks this court to consider the factors listed in NRS 80.015 instructive on the definition of doing business in Nevada, even though the statute was enacted after this suit was commenced. However, before the legislature enacted NRS 80.015, Nevada had no analogous statute. Therefore, we cannot impute knowledge of those factors to Viking.

In previous Nevada cases that have addressed this issue, we permitted the foreign corporation's suit to go forward by concluding that it need not qualify to do business in this state. Sierra points out that each case involved foreign companies whose connections with Nevada were fewer than Viking's. In re Hilton Hotel, 101 Nev. 489, 706 P.2d 137 (1985) (conducting a single piece of business—attending a convention in Nevada—does not constitute doing business); Peccole v. Fresno Air Serv., Inc., 86 Nev. 377, 469 P.2d 397 (1970) (foreign corporation's solicitation of agreement to transport Nevada passengers within another state in promotion of interstate business did not constitute doing business in state for purposes of NRS 80.210). Patterson v. Condos, 55 Nev. 134, 28 P.2d 499 (1934) (predecessor to NRS 80.210 does not apply to a supplier who does only occasional business in the state).

Even though the activities of the corporations in *Hilton Hotel, Peccole,* and *Patterson* were more sporadic, or less connected to Nevada than Viking's activities, our reasoning in those cases applies to Viking's situation. For example, in *Peccole,* a California company called Fresno Air sent a representative into Nevada to solicit contracts. The company's duty under the contract was to fly passengers from Fresno to Truckee as part of a vacation package. The court decided that "a corporation is free to send a representative into Nevada to promote interstate trade without interference from regulations imposed by this state." *Peccole,* 86 Nev. at 380, 469 P.2d at 398. Like Fresno Air, Viking's Nevada employee promoted interstate trade. Viking's situation might be distinguishable by its volume of business in Nevada, but not by the nature of that business.

As we mentioned earlier, Viking's activities are predominately interstate, but its high volume of sales in Nevada approaches a quantity that might subject a company to regulation. Unlike *Eli Lilly,* Viking had only one Nevada employee instead of eighteen, and only contacted companies who would buy products directly from Viking. *Cf., Eli Lilly,* 366 U.S. at 279-281. It had no business office in Nevada, although it did have a phone listed in the Las Vegas directory. Also, it tried to complete all transactions

with Nevada companies within thirty days unless the other party requested an extension. However, like *Eli Lilly,* but unlike the Nevada cases and NRS 80.015, Viking's business in Nevada was continuous and systematic as opposed to isolated and occasional. This transaction with Sierra amounted to only about $1/100$ of Viking's total sales volume in Nevada for 1983. In addition, Ms. Aronsohn was not an independent contractor, but an employee of Viking who lived and worked in Nevada.

Although Viking's activities do appear to be continuous and systematic, we cannot say that it had so localized itself into the community that its activities in Nevada took on an intrastate quality. Therefore, we affirm the judgment of the district court holding Sierra liable for breach of contract. Viking's connections with Nevada did not prohibit it from bringing suit in Nevada courts.

In its findings of fact and conclusions of law, the district court never discussed Viking's capacity to sue as it should have pursuant to NRCP 52(a). If the court makes no ruling, findings may be implied when clearly supported by the record. Hardy v. First Nat'l Bank of Nev., 86 Nev. 921,478, P.2d, 581 (1970); Pease v. Taylor, 86 Nev. 195, 465 P.2d 109 (1970). The complexities involved in this case should have prompted the district court to rule on this issue. However, the conclusion that Viking need not qualify as a foreign corporation doing business in Nevada is implicit in the district court's ruling in Viking's favor in the underlying action. As we are affirming the judgment, we see no reason to remand the case for a finding which the lower court implied in its judgment.

*Imposition of Sanctions*

Viking's sales representative in Nevada, Linda Aronsohn, was unavailable at trial. Therefore, the district court permitted Viking to read her deposition into the record. In doing so, counsel for Viking omitted the portion where Aronsohn specifically states that she resided in Las Vegas. This omission appears to have been intentional.

In its answering brief, counsel for Viking specifically stated that its Nevada representative, Linda Aronsohn, did not reside in Nevada. If true, this fact would buttress Viking's argument that it was not conducting business in Nevada. However, counsel for Viking knew or should have known from the omitted portion of the deposition that Aronsohn lived in Las Vegas. Sierra wrote a

letter to Viking's counsel complaining of this misstatement. Viking subsequently filed a notice of errata in which it changed its statement that Aronsohn did not live in Nevada to "a connotation of the record" is that she did not live in Nevada.

Counsel for Viking contends that such a connotation is possible because an associate who had not participated in this case at the trial level prepared the appellate brief. In his review of the record, he would not have discovered Aronsohn's place of residence. Therefore, even if the associate should not have made the positive representation that Aronsohn resided outside of Nevada, he was correct in asserting that "a connotation of the record" is that she did not reside in Nevada, and anything less than that assertion would not be proficient appellate advocacy. Also, counsel for Viking asserts that if Sierra wanted Aronsohn's domicile in the record, it should have objected when Viking omitted that part of her deposition from the record.

Unfortunately, what Viking's counsel considers clever lawyering and proficient advocacy is nothing other than a fraud on the court in violation of SCR 172(1)(a) and (d).[3] An attorney has no obligation to proffer evidence that helps the opponent. But if an attorney represents that he or she is proffering an entire document, omitting pertinent portions of that document is a blatant fraud. Omitting Aronsohn's domicile from the record was not clever lawyering, but an act which was calculated to mislead the tribunal in violation of SCR 172. Equally egregious is Viking's counsel's assertion that Sierra could have objected to the omission. A fraud remains a fraud even when the perpetrator does not get caught.

Viking's counsel's actions after the original fraud are even more reprehensible. The firm made an affirmative representation in its appellate brief that it should have known was false, and then blamed the error on the fact that a different attorney in the same firm, an associate, wrote the brief. Whether that associate knew he was making a false statement of material fact to the court, or whether he honestly read the record and was unaware of his "mistake," makes no legal difference. All knowledge available to

---

[3]SCR 172.  Candor toward the tribunal.

1.  A lawyer shall not knowingly:

(a) Make a false statement of material fact or law to a tribunal;

. . . .

. . . .

(d) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

the firm is imputed to the attorney writing the appellate brief. Therefore, the statements in the brief regarding Aronsohn's domicile are a direct violation of SCR 172(1)(a).

Perhaps the most egregious action that Viking's counsel took was their failure to correct the misstatement once it was brought to their attention. If the record truly connotes that Aronsohn did not live in Nevada, it is only because Viking's counsel omitted part of her "entire" deposition. Their failure to correct the misstatement with something more than an assertion that their false statement could be true is a violation of SCR 172(1)(d). Viking's counsel knew a representation in the brief was false, but refused to retract it as required by the Supreme Court Rules.

If Viking's counsel felt justified in their actions, they clearly have confused the concepts of effective advocacy and fraud. Perhaps some additional education is necessary to clarify these vastly separate concepts, but meanwhile, sanctions are warranted pursuant to SCR 101 and SCR 102. The issue which prompted the misrepresentations does not change the outcome of the case, as Aronsohn's actual domicile does not have a great effect on the nature or quantity of Viking's business in Nevada. Still, an ineffective fraudulent scheme is fraudulent, nonetheless. Therefore, we refer Viking's counsel to the Southern Nevada Disciplinary Board of the State Bar of Nevada to impose the appropriate sanctions.