David J. BROGDON and Annie Brogdon, Plaintiffs,

v.

EXTERIOR DESIGN, a Louisiana Corporation and American Savings Mortgage Corporation, a Texas Corporation; American Savings and Loan Association of Brazoria County, Texas, a Texas chartered Savings and Loan Association, Defendants,

Federal Savings & Loan Insurance Corporation, as Conservator for American Savings Mortgage Corporation and American Savings & Loan Association of Brazoria County, Texas, by the Federal Deposit Insurance Corporation, as Manager for the Conservator, Intervenor.

Civ. No. 89–1089.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Jan. 29, 1992.

Gary McDonald, El Dorado, Ark., for plaintiffs.

Frederick S. Wetzel, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

On September 19, 1991, a trial to the court was held on this action. At the close of the trial the case was taken under advisement and the parties were directed to submit briefs to the court. The court has received the briefs from the parties. This matter is ripe for determination.

At the trial of this case the only parties to participate were the plaintiffs and counsel for the Resolution Trust Corporation ("RTC"). Exterior Design failed to appear at the trial.

## FACTUAL BACKGROUND

The dispute in this case arose from an arrangement for Exterior Design to make improvements upon the home of the plaintiffs. The plaintiffs are a married couple residing in the city of El Dorado, Arkansas. Exterior Design was a company located in Monroe, Louisiana, that constructed home improvements.

Mrs. Brogdon was told about Exterior Design's services by a friend named Ruby Williams. Mrs. Williams contracted with Exterior Design for the installation of siding upon her home. Mrs. Williams was to receive a cash bonus from Art Nicholson, a vice president of Exterior Design, for any referrals she made to Exterior Design. In the fall of 1986, Art Nicholson was introduced to Mrs. Brogdon by Ruby Williams. Nicholson requested the opportunity to discuss Exterior Design making improvements upon the Brogdons' residence.

Mr. Nicholson and the Brogdons had discussions about the cost of the home improvements. Mrs. Brogdon indicated to Mr. Nicholson that she and her husband owed substantial debts and made large payments each month. Mrs. Brogdon told Nicholson that she and her husband could not afford to make any home improvements. Nicholson proposed that the amount of the loan could be inflated so that the Brogdons could receive $7,500 out of the $17,500 loan.[1] Nicholson indicated that this was a common practice. The idea was for the Brogdons to use the $7,500 "kickback" to pay off their existing debts. The Brogdons would then make a single monthly payment to the institution that financed the home improvement loan.

The testimony at trial was clear that the Brogdons agreed to Nicholson's offer for a $7,500 "kickback" or "rebate".[2] The evidence is equally clear that at the direction of Exterior Design Annie Brogdon told an employee of American S. & L. that she was not receiving a kickback. The home improvement work was completed by the time that Mrs. Brogdon spoke with the employee from American S. & L.

The Brogdons received a "advance notice of acceptance and intent to purchase an FHA Title I note" dated December 9, 1986, from American Mortgage. The Brogdons signed a "FHA insured home improvement retail installment contract and disclosure statement" on December 8, 1986. Kenny L. Galyean, vice president of Exterior Design, also signed the retail installment con-

---

1. The "contract and guarantee" (plaintiffs' trial exhibit 1) and the note (plaintiffs' trial exhibit 2) signed by Art Nicholson and the Brogdons was for $17,500. This amount was to be paid in 120 payments of $274.73. The interest rate was listed on the note as 13.995%.

2. Mrs. Brogdon requested that Nicholson provide documentation of the proposed $7,500 pay-

ment. The plaintiffs' introduced at trial (plaintiffs' exhibit 6) a handwritten note dated December 6, 1986, signed by Art Nicholson and witnessed by Mose Lyons. The note reads as follows: "This will certify that Art Nicholson will pay Mrs. David Brogdon $7,500 from the $17,500 job when we get our money."

tract on December 8, 1986.[3] The retail installment contract indicated: the amount financed was $17,500, the finance charge was $15,467.60, the interest rate was 13.-99%, and the total sale price was $32,-967.60.

The Brogdons did not receive the $7,500 from Exterior Design. Art Nicholson never made any payment to the Brogdons. Mrs. Brogdon travelled to Monroe, Louisiana to the headquarters of Exterior Design. She made contact with Kenny Galyean and Kenneth Redding, officers of Exterior Design. They denied any knowledge of the promise by Nicholson to pay $7,500 to the Brogdons. They agreed to pay Mrs. Brogdon $2,000 the amount of Nicholson's commission on the home improvement deal. The Brogdons did not receive any payment from Exterior Design, Mr. Galyean or Mr. Redding.

The home improvements were completed on or about January 21, 1987. The Brogdons indicated that they were satisfied with the home improvements.

## WINGO ACT

█ The plaintiffs' argument is that the "Wingo Act"[4] applied to the transaction and that the contract between the plaintiffs and Exterior Design was void ab initio and unenforceable. The plaintiffs assert that Exterior Design did not meet the filing requirements of a foreign corporation in existence prior to December 31, 1987, as provided in the Wingo Act. The last act necessary for the completion of the contract was committed in Arkansas according to the plaintiffs.

Exterior Design did not participate in the trial, but stated its position in the motions it filed prior to trial. By all indications Exterior Design no longer exists.[5] Exterior Design asserted that the note and mortgage were assigned to American Mortgage without recourse and that Exterior Design retained no interest in either. Exterior Design further asserted that it had no standing to enforce the note or mortgage and no intention to take action under either document.

Exterior Design stated that the plaintiffs' cause of action was barred by estoppel, waiver, and statute of limitations. Exterior Design asserted as an affirmative defense that the Wingo Act doesn't apply because the last act necessary for the completion of the contract took place in Louisiana. Exterior Design argued that the Wingo Act does not apply because the transaction in question took place in interstate commerce.

The court looks to Arkansas law to resolve whether or not the Wingo Act is applicable to the contract between the Brogdons and Exterior Design. The Wingo Act required that a foreign corporation doing business in Arkansas file with the Secretary of State a copy of its Articles of Incorporation, a statement of assets and liabilities and a list of any capital employed in the state. *Dickson v. Delhi Seed Co.*, 26 Ark.App. 83, 90–92, 760 S.W.2d 382, 387 (1988). If a foreign corporation failed to comply with the Wingo Act it was prohibited from enforcing a contract made in Arkansas.

In some cases the foreign corporation was allowed to seek equitable relief that did not require enforcing the contract.

"The Wingo Act prevents an unregistered foreign corporation from enforcing its contracts. The relief being awarded the appellees, however, is restitutionary in nature and is based upon the theory of quasi-contract ... Such a recovery when based upon unjust enrichment does not involve the enforcement of a contract."

*Dews v. Halliburton Industries, Inc.*, 288 Ark. 532, 539–541, 708 S.W.2d 67, 71 (1986). The proof of the terms of the unenforceable contract might well be unnecessary. "[F]oreign corporations operating in violation of the Wingo Act have been allowed to recover in Arkansas based upon theories

---

3. These two documents were introduced at trial as defendants' exhibits 1 and 2.

4. Arkansas Code Annon. § 4–27–104 was repealed by Acts 1987, No. 958, § 64–1705.

5. The notices and orders mailed to the last address of Exterior Design by the District Court clerk were returned with the notation that no forwarding address was available.

such as quasi-contract, which do not require use of the unenforceable contract to prove their case." *Midland Development v. Pine Truss, Inc.*, 24 Ark.App. 132, 135, 750 S.W.2d 62, 64 (1988).

■ The application of the Wingo Act to a foreign corporation that has "localized" its business does not violate the Commerce Clause.[6] *North American Phillips v. Gaytri Corp.*, 291 Ark. 11, 14–18, 722 S.W.2d 270, 272–273 (1987); *Uncle Ben's Inc. v. Crowell*, 482 F.Supp. 1149, 1155 (E.D.Ark.1980). Judge Overton found in *Uncle Ben's Inc. v. Crowell* that the rice business was essentially interstate in nature and not a "localized" operation. Judge Overton noted that the product was destined for a national or international market. 482 F.Supp. at 1154.

The construction work on the home of the Brogdons and the home of Ruby Williams was done in the State of Arkansas. The completion of the construction is the final operative act of the contract. All negotiations prior to the execution of the contract occurred in Union County, Arkansas. All documents signed by the Brogdons were signed in Arkansas. Exterior Design was located in Louisiana. American Savings was located in Texas.

The court specifically finds that Exterior Design was doing business in Arkansas in violation of the Wingo Act. The operation of Exterior Design was sufficiently localized in nature as to allow state regulation. *Uncle Ben's Inc. v. Crowell, supra.* The contract between Exterior Design and the plaintiffs' is therefore unenforceable. Accordingly, the note and mortgage are invalid.

Plaintiffs originally sued only Exterior Design and American Savings Mortgage Corporation ("American Mortgage"), but included American Savings & Loan Association ("American S. & L.") in the amended complaint.[7] Plaintiffs stated in the amended complaint that Exterior assigned the mortgage in question to American Mortgage and American S. & L. American Mortgage and American S. & L. filed a Counterclaim arguing that the plaintiffs were in default on the note and that American S. & L. had a right to foreclose on the mortgage.

In its First Amended Answer and Counterclaim American Mortgage and American S. & L. asserted three different counts. Count I dealt with the plaintiffs' default on the note and the right to foreclose. Count II alleges that the plaintiffs conspired with Art Nicholson, an agent of Exterior Design, to defraud American Mortgage in connection with the funding of the H.U.D. Title I loan. According to American Mortgage and American S. & L. the plaintiffs made material misrepresentations to personnel with American Mortgage in relation to a $7,500.00 cash rebate from Exterior Design to the plaintiffs. Count III makes an quantum meruit argument, i.e., the plaintiffs would be unjustly enriched and American Mortgage and American S. & L. would be affected detrimentally if the note and mortgage were voided.

■ On October 30, 1990, RTC as receiver for American Savings filed a motion for stay. A 90 day stay was granted on October 31, 1990, pursuant to 12 U.S.C. § 1821(d)(12)(A) & (B). RTC is representing the interests of American S. & L. RTC argues that the doctrine of *D'Oench, Duhme & Company v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) prevents the plaintiff from asserting any defenses to RTC's rights to enforce the promissory note and mortgage. The doctrine of *D'Oench, Duhme & Company* as codified in 12 U.S.C. § 1823(e) does not apply to this transaction if the contract, note and mortgage were void ab initio. This situation is analogous to an instrument that is executed involving fraud in the factum.

"[T]he defense of fraud in the factum ... would take the instrument out of § 1823(e), because it would render the

---

6. United States Constitution, art. 1, § 8, cl. 3.

7. This case was removed from Union County Chancery Court (88–313) on the petition of removal by the Federal Savings & Loan Insurance Corporation as conservator for American Savings & Loan Association of Brazoria County, Texas, and the Federal Deposit Insurance Corporation, as manager for the conservator.

instrument entirely void ... thus leaving no 'right, title, or interest' that could be 'diminished or defeated'.... The bank therefore had and could transfer to the FDIC voidable title, which is enough to constitute 'title or interest' in the note."

*Langley v. FDIC,* 484 U.S. 86, 93–94, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987).

The court specifically finds that the plaintiffs can assert the protection of the Wingo Act as a defense. The court further finds that the note, contract and mortgage were void ab initio and the doctrine of *D'Oench, Duhme & Company v. FDIC* is inapplicable.

### EQUITABLE RELIEF

 The court is not prepared to allow the plaintiffs to be unjustly enriched due to the failure of Exterior Design to comply with the terms of the Wingo Act. RTC as a assignee of Exterior Design may recover under a theory of quantum meruit. *Midland Development v. Pine Truss, Inc.,* 24 Ark.App. 132, 750 S.W.2d 62 (1988); *Dews v. Halliburton Industries, Inc.,* 288 Ark. 532, 708 S.W.2d 67 (1988). Exterior Design received $17,500 from American S. & L. to make home improvements upon the Brogdon home. The Brogdons have had the benefit of these improvements.

Count III of the counterclaim filed by American Mortgage and American S. & L. asks for a judgment for $17,500.00 for the amount paid to Exterior Design for construction on the home of the Brogdons. In *C.B. International, Inc. v. Cook,* 659 F.2d 862, 863 (8th Cir.1981) the Eighth Circuit allowed a foreign corporation to rescind a contract and seek restitution even though the Wingo Act prevented the corporation from enforcing the contract.

The court, relying upon its equitable powers, concludes that the plaintiffs should pay $13,653.78. This is the agreed upon cost of the home improvements minus the amount the plaintiffs paid by installment ($3,846.22).[8]

**8.** The plaintiffs paid 14 installments of $274.73 each.

### CONCLUSION

The Wingo Act applied to the operations of Exterior Design. Exterior Design failed to register with the Arkansas Secretary of State and was doing business within Arkansas. The contract, note and mortgage were void ab initio because of the application of the Wingo Act.

The plaintiffs would be unjustly enriched if they were allowed to receive the benefits from the home improvements, but not required to pay for the improvements. RTC should be given a judgment for $13,653.78.