# Meunerie Sawyerville, Inc. v. Richard and Christine Birt

[637 A.2d 1082]

No. 93-029

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 14, 1994

*David C. Drew*, and *David L. Giles*, Lyndonville, for Plaintiff-Appellant.

*Peter J. Morrissette*, St. Johnsbury, for Defendants-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *William H. Rice*, Assistant Attorney General, Montpelier, for Amicus State of Vermont.

**Johnson, J.** The issue before the Court is whether 11 V.S.A. § 2120(a) requires a foreign corporation engaging in interstate and intrastate commerce to register to do business in this state as a prerequisite to filing suit on a contract in this state's courts. We hold that where the corporation's intrastate activities are incidental to the interstate activities, the transaction is one in interstate commerce and thus the Commerce Clause of the United States Constitution protects the foreign corporation from application of 11 V.S.A. § 2120(a). Consequently, we reverse the judgment of the trial court granting defendants' motion to dismiss the plaintiff's action for the unpaid balance on feed sales.

Plaintiff is a Canadian corporation. The trial court found that plaintiff's business dealings in Vermont began with a visit by its president to defendants' farm to solicit an agreement to provide defendants with cattle feed "from time to time upon their re-

quest." Most of the orders thereafter were placed by telephone to plaintiff in Quebec. Some orders were placed with plaintiff's drivers when feed orders were delivered. An agent of plaintiff visited with farmers in Vermont and New Hampshire "generating sales and providing forage analyses and nutrition consultation on behalf of Plaintiff relating to prospective and existing customers." The feed sold to defendants was produced entirely in Quebec and transported to Vermont by plaintiff's drivers.

The trial court found that the contract was made in Vermont because the sale of grain was initiated and consummated here, and the expectation and agreement was that there would be an ongoing relationship for the purchase of grain. It concluded that plaintiff "was transacting or doing business in the State and did not have a Certificate of Authority from the Secretary of State." Because 11 V.S.A. § 2120(a) bars an unregistered foreign corporation from maintaining an action in state court on a contract made in Vermont, the trial court then analyzed the constitutionality of that statute under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. The court concluded that the registration statute did not unreasonably burden interstate commerce. Consequently, the trial court dismissed the action and the present appeal followed.

Plaintiff argues that the court erred in holding that the contract was made in Vermont, because the last act essential to the completion of the various grain sales was the seller's acceptance, which occurred, for the most part, in Canada. It further argues that, even if the contract was made in Vermont and it was "doing business" in Vermont, the international sale and delivery of goods is a transaction in interstate commerce, excepted from state registration statutes under the Commerce Clause of the United States Constitution.

The question of the locus of the contract is one of fact. See *West-Nesbitt, Inc. v. Randall*, 126 Vt. 481, 484, 236 A.2d 676, 678 (1967). There was sufficient evidence in the record to support the trial court's finding that the contract was made in Vermont, and this finding is not clearly erroneous. See V.R.C.P. 52(a)(2). But, plaintiff is correct that the locus of the contract is not the end of the inquiry. The fact that the contract was made in Vermont merely invokes the application of 11 V.S.A. § 2120(a), it does not resolve the Commerce Clause question—

whether 11 V.S.A. § 2120(a) can constitutionally bar plaintiff's suit.[1]

The Commerce Clause limits a state's power to enforce "door-closing" statutes such as 11 V.S.A. § 2120(a).[2] 11 V.S.A. § 2215; *Aetna Chem. Co. v. Spaulding & Kimball Co.*, 98 Vt. 51, 66, 126 A. 582, 588 (1924); *Kinnear & Gager Mfg. Co. v. Miner*, 89 Vt. 572, 574, 96 A. 333, 334 (1916); *Livingston Mfg. Co. v. Rizzi Bros.*, 86 Vt. 419, 424, 85 A. 912, 914 (1913). Specifically, the United States Supreme Court has held on numerous occasions that state licensing statutes unduly burden interstate commerce when applied to foreign corporations engaged in wholly interstate or foreign commerce.[3] See, e.g., *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 33–34 (1974); *Eli Lilly & Co. v. Sav-On-Drugs*, 366 U.S. 276, 283–84 (1961); *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 291 (1921).

In a series of decisions known as the "drummer" cases, the Supreme Court held that foreign corporations sending salespersons into a state to "drum up" business were not subject to state licensing requirements. The intrastate "drumming" was

---

[1] This case does not implicate the state's authority to tax a foreign corporation's local business activity, nor does it involve the state's authority to subject foreign corporations to service of process under long arm jurisdiction statutes such as 12 V.S.A. § 855. It concerns only the state's authority to require foreign corporations engaged in interstate commerce to register with the Secretary of State and bar them from suit in its courts upon failure to do so. See *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 289 (1961) (Douglas, J., dissenting).

[2] The Commerce Clause gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

[3] "[C]ommerce with foreign nations means commerce between citizens of the United States and citizens and subjects of foreign nations, and commerce among the States means commerce between the individual citizens of different States . . . ." *Trade-Mark Cases*, 100 U.S. 82, 96 (1879). Nonetheless, when resolving cases involving the scope of burdens on foreign commerce, courts have used the same analysis that is used in interstate commerce cases and used the term "interstate commerce" to include foreign commerce. See, e.g., *American Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266 (1987); *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20 (1974); *Upper Lakes Shipping, Ltd. v. Seafarers' Int'l Union of Canada*, 119 N.W.2d 426 (Wis. 1963). Because the issues are substantially similar, we also include foreign or international commerce within the meaning of any reference to "interstate commerce."

considered so incidental to interstate sales that such activities were treated as wholly interstate. See, e.g., *International Textbook Co. v. Pigg*, 217 U.S. 91, 105–06 (1910).

The drummer cases were decided in the early 1900s, but the Supreme Court reaffirmed the holding of those cases in *Eli Lilly & Co. v. Sav-On-Drugs*. The Court held that Lilly was "doing business" in New Jersey, and therefore subject to its licensing statute, where the corporation maintained an office in Newark staffed by a district manager who supervised eighteen employees. *Eli Lilly & Co.*, 366 U.S. at 283–84. The employees travelled the state promoting Lilly's pharmaceutical products to retailers, physicians, and hospitals, who then purchased Lilly products through local warehouses. *Id.* at 280–81. Thus, the promotional activity of the employees resulted in intrastate purchases from local warehouses, rather than interstate sales. *Id.* at 281. In rejecting Lilly's claim that its activities were protected from state regulation by the Commerce Clause, the Court distinguished Lilly's indirect marketing program from the classic drummer cases. *Id.* at 281–83. The Court made clear that if Lilly's salespeople were directly soliciting interstate sales within New Jersey, it could not be required to register under state law. *Id.* at 278–79.

Our own state precedent is consistent with the drummer cases. In *Kinnear & Gager Mfg. Co. v. Miner*, 89 Vt. at 573–74, 96 A. at 333, we stated the rule governing such cases:

> Where a foreign corporation is engaged in transactions which are in character partly interstate commerce and partly purely local, and the latter element can be separated from the former, state statutes apply.
>
> . . . .
>
> If, on the other hand, the local element of the transaction is merely incidental to the element of interstate commerce, the whole is protected from state laws.

Our precedent is also consistent with the practice of other states. See *North Alabama Marine, Inc. v. Sea Ray Boats, Inc.*, 533 So. 2d 598, 601–02 (Ala. 1988) (advertising and maintenance of place of business for sales and service of products through agent was incidental to the transaction of interstate business, and thus insufficient to subject manufacturer of prod-

ucts to Alabama registration statute); *Dickson v. Delhi Seed Co.*, 760 S.W.2d 382, 387 (Ark. Ct. App. 1988) (Commerce Clause would have precluded application of state registration statute where ordinary business of corporation was to buy rough grain, process it in another state, and sell it throughout South where corporation's contact with forum was to buy only ten percent of rough product in Arkansas and sell only five percent of finished product there); *Sierra Glass & Mirror v. Viking Indus., Inc.*, 808 P.2d 512, 514–15 (Nev. 1991) (although plaintiff did substantial volume of business in Nevada, its employment of one sales representative, who personally solicited and placed orders, and telephone listing were not sufficient to find that its activities were so localized as to rise to an "intrastate quality"); see also cases collected at Annotation, *What Constitutes Doing Business Within State for Purposes of State "Closed-Door" Statute Barring Unqualified or Unregistered Foreign Corporation From Local Courts—Modern Cases*, 88 A.L.R.4th 466 (1991); see generally Note, *Corporate Registration: A Functional Analysis of "Doing Business,"* 71 Yale L.J. 575 (1962); Note, *A Proposed Minimum Threshold Analysis for the Imposition of State Door-Closing Statutes*, 51 Fordham L. Rev. 1360 (1983).

Thus, the focus of the inquiry in this narrow class of Commerce Clause cases is whether a foreign corporation's intrastate activities have become sufficiently localized and independent from its interstate enterprise to warrant compliance with registration requirements. Accordingly, the question is not, as the trial court held, whether the registration statute in the abstract discriminates against foreign corporations or burdens interstate commerce. That facial attack on registration statutes has already been decided by the Supreme Court. See *Allenberg Cotton Co.*, 419 U.S. at 33–34; *Eli Lilly & Co.*, 366 U.S. at 279. Consequently, the trial court should have made findings on whether plaintiff's activities are so localized within Vermont as to require it to register to do business.

The evidence and findings focused on where the contract was made. The trial court found that the contract was made in Vermont, but defendants had the further burden of showing that the intrastate activities were separate from the interstate ones. Defendants' evidence showed only that plaintiff came to their

farm to solicit the sale of feed, offering and providing the ongoing services of an agent as a nutrition specialist/consultant for the company. Forage and nutrition analyses were done in Canada; the feed was produced in Canada and delivered here by plaintiff's trucks. Further orders were taken primarily over the telephone to plaintiff in Canada. The court did not find, and the evidence does not suggest, that plaintiff established any legal, proprietary, or permanent physical presence in Vermont. Under these circumstances, the initial solicitation and nutritional analyses were incidental to the main purpose of the transaction, the interstate sale of feed. Therefore, applying the *Kinnear* rule to these facts, we conclude that plaintiff's suit is not barred by 11 V.S.A. § 2120(a) because plaintiff's business activities in Vermont were incidental to an interstate purpose.

Defendants argue that our recent decision in *Pennconn,* barring an unregistered foreign corporation from suit on a contract involving a condominium project in southern Vermont, compels a different conclusion. The difference between *Pennconn* and this case is that there was nothing foreign about Pennconn's activities except the state of its incorporation. *Pennconn* did not involve sales in interstate commerce. Its business was to develop land within Vermont. In pursuit of that business, it entered into contracts for the purchase of real estate, it applied for permits, hired an engineering firm to prepare plans for submission to the state, and hired a Vermont lawyer. It received a town sewer permit for the project. *Pennconn Enterprises, Ltd. v. Huntington*, 148 Vt. 603, 604–06, 538 A.2d 673, 674–75 (1987). The entire purpose and nature of its activities were wholly intrastate.

Nevertheless, defendants argue that *Pennconn* applies because the grain sales here were not sales in interstate commerce. It reasons that, because the grain was sold for end use in Vermont, it was not put into the stream of commerce like the grain in *Allenberg Cotton Co.* or *Dahnke-Walker*. Defendants' apparent distinction is that, in those cases, the objects of the contract enforcement actions were commodities (cotton and wheat) to be raised in the defendants' states and sold to the plaintiffs, located in different states, with the likelihood of further interstate resale by plaintiffs in each case. Defendants cite no authority supporting the proposition that a sale commencing

in state or foreign country *A* and terminating in state *B* is not an interstate sale. This is, in fact, the definition of an interstate sale. See *Olan Mills, Inc. v. City of Barre*, 123 Vt. 478, 482, 194 A.2d 385, 387 (1963); *Trade-Mark Cases*, 100 U.S. at 96.

Defendants also place reliance on *Brogdon v. Exterior Design*, 781 F. Supp. 1396 (W.D. Ark. 1992), and *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991). In *Brogdon*, a foreign plaintiff's construction work on a house in the forum state evidenced that its business was localized and subject to its registration statute. *Brogdon*, 781 F. Supp. at 1399. In *S & H Contractors*, a contract solely for the assembly of machinery in the forum state was not one in interstate commerce and was unenforceable in the forum state. *S & H Contractors*, 906 F.2d at 1510–11. Defendants argue that the activities of plaintiff were similar to the plaintiffs in *Brogdon* and *S & H Contractors* because the agreement here provided for the services of the nutritionist, as well as sales. There is no evidence that the nutritionist's efforts were the object of the contract between the parties, as the construction work was in both *Brogdon* and *S & H Contractors*. The nutritionist's task was to help the customer select the proper product and was integral to the sales effort. The trial court did not find that the nutritionist was retained to perform nutrition analysis work independent of plaintiff's sales efforts, nor is there any evidence that plaintiff established an independent office or laboratory that offered nutrition analysis services in Vermont. To the contrary, the evidence showed that the forage analyses were performed in Canada.

In sum, the court's findings supported its conclusion that the contract between the parties was made in Vermont and that plaintiff was doing business in Vermont, but the court erred in basing its decision under § 2120(a) on these limited findings. Plaintiff was engaged in interstate commerce, and on the basis of the court's findings and the record in this case, plaintiff's activities in Vermont were not so localized as to require it to register with the Secretary of State to do business in Vermont or subject it to the door-closing penalty in 11 V.S.A. § 2120(a) for failure to do so. Thus, the complaint should not have been dismissed.

*Reversed and remanded.*