RTTC COMMUNICATIONS, LLC, A Nevada Limited Liability Company, Appellant, v. THE SARATOGA FLIER, INC., A California Corporation, DBA PINSKER AND COMPANY, Respondent.

No. 41005

April 14, 2005

110 P.3d 24

[Rehearing denied June 2, 2005]

*Law Offices of Richard McKnight, P.C.,* and *Richard McKnight,* Las Vegas, for Appellant.

*Lemons Grundy & Eisenberg* and *Alice G. Campos Mercado* and *David R. Grundy,* Reno, for Respondent.

*Brian Sandoval,* Attorney General, and *Dianna Hegeduis,* Senior Deputy Attorney General, Carson City, for Amicus Curiae.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal we consider whether NRS 611.030, which requires that employment agencies operating in Nevada be licensed by the Labor Commissioner, applies to out-of-state executive recruiters. We conclude that NRS 611.030 does not require an executive recruiting agency operating in another state to obtain a Nevada license when that agency is hired for a single transaction by a Nevada employer.

### FACTS AND PROCEDURAL HISTORY

In the fall of 2001, appellant Reno Tahoe Tech Center Communications, LLC (RTTC) solicited the services of Saratoga Flier, Inc., d/b/a Pinsker and Company (Pinsker), in California for the purpose of recruiting and selecting a chief executive officer (CEO) for RTTC. Pinsker was a California corporation, but it was not required to be licensed as an employment agency under California law.[1]

A recruitment agreement was signed in Nevada by RTTC manager Kreg Rowe and Pinsker, providing for a $50,000 consulting fee to hire a CEO. The agreement additionally provided that if any other employee was hired as a direct result of Pinsker's services, RTTC would pay Pinsker an amount equal to one-third of that employee's actual first year cash compensation.

Pinsker met with RTTC executives to develop a profile for the CEO position and was invited to an RTTC management meeting a few weeks later to gain a better understanding of the organization. Subsequently, Pinsker recommended Madison Laird, a California resident, for the CEO position. Pinsker checked Laird's references and scheduled an interview for RTTC with Laird. RTTC hired Laird as President/CEO, with Pinsker assisting in the negotiations of the compensation package. Pinsker was paid its $50,000 fee according to the agreement.

While searching for CEO candidates, Pinsker also interviewed California resident Janice Fetzer. Pinsker communicated to RTTC that Fetzer, while not an appropriate CEO candidate, would be a good candidate for a Vice-President position. Pinsker eventually recommended Fetzer to Laird. Laird asked Pinsker how any fee

---

[1]*See* Cal. Civil Code § 1812.501(a)(1) (West 1998) (defining employment agencies, in pertinent part, as "[a]ny person who, for a fee or other valuable consideration to be paid, directly or indirectly by a *jobseeker,* performs, offers to perform or represents it can or will perform any of the following services" (emphasis added)).

due Pinsker for hiring Fetzer would affect RTTC's bottom line. Pinsker advised Laird that the fee was governed by the recruitment agreement with RTTC. Laird interviewed Fetzer and subsequently hired her for an annual salary of $160,000. Pinsker billed RTTC $53,333 under the agreement.

Pinsker was never paid and sued RTTC and Rowe in March 2002 to collect the fee due for hiring Fetzer. RTTC counterclaimed for the return of the fee paid to Pinsker for hiring Laird, alleging that Pinsker was not licensed in Nevada as an employment agency.

Originally, Pinsker had named as defendants RTTC, Rowe as agent for RTTC, and Redundant Networks, Inc. (Redundant), as successor-in-interest to RTTC. In May 2002, Pinsker made an offer to take judgment against all three defendants in the amount of $45,000. That offer was rejected. Rowe and Redundant were voluntarily dismissed in September 2002. After a two-day trial, the district court ruled in favor of Pinsker, awarding it $53,333, plus interest. The court found that the recruiting agreement was valid and enforceable, that Pinsker deserved to be compensated for its work under the agreement, and that NRS Chapter 611 did not apply to Pinsker. The court also dismissed RTTC's counterclaim. Subsequently, the court granted Pinsker's motion for attorney fees under NRCP 68. RTTC filed a timely appeal. We affirm.

## DISCUSSION

RTTC first argues that Pinsker meets the statutory definition of employment agency. Pinsker, on the other hand, urges this court to conclude that executive recruiting agencies that only charge fees to employers, not prospective employees, do not fall under the licensing requirement of Nevada's employment agency statutes, since those statutes are intended to protect employees, not employers, from unlicensed agencies.

### Statutory definition of employment agency

As recognized by the United States Supreme Court, a fundamental canon of statutory construction is that a court must first "presume that a legislature says in a statute what it means and means in a statute what it says there."[2] This court has stated that "when the language of a statute is plain, its intention must be deduced from such language, and the Court has no right to go beyond it,"[3] and "[w]here the language of a statute is susceptible of a sen-

---

[2]*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

[3]*Hess v. The County Commissioners of Washoe County*, 6 Nev. 104, 107 (1870) (republished as 5-6-7 Nev. 444, 446).

sible interpretation, it is not to be controlled by any extraneous considerations.''[4]

NRS 611.020(2)(b) defines employment agency, in part, as follows:

> 2. ''Employment agency'' means any person who, for a fee, commission or charge:
>
> . . .
>
> (b) Furnishes information to a person seeking employees enabling or tending to enable him to obtain employees . . . .

The plain language of NRS 611.020(2)(b) makes it clear that even an executive recruitment firm such as Pinsker, which charges fees only to employers, falls within the definition provided in the statute. Regardless of the fee arrangements, or any other considerations, the firm at issue did indeed ''[furnish] information to a person seeking employees,'' as specifically delineated in the statute. Thus, Pinsker meets the statutory definition of employment agency. Next, we consider whether the statutes require licensing of an out-of-state employment agency for a single transaction within this state.

## ''Doing business'' in Nevada

NRS 611.030 requires that employment agencies operating in Nevada be licensed.[5] Subsection (1) forbids opening, keeping, operating or maintaining an employment agency in the state. Subsection (2) forbids soliciting employers in the state, and referring or placing a person for employment in this state, or otherwise doing business in this state.

Pinsker did not ''open, keep, operate or maintain an employment agency in this state,'' since it was located in California. Further, the record demonstrates that RTTC solicited Pinsker in California, and that Pinsker located Laird and Fetzer in California.

The issue, then, is whether Pinsker's agreement with RTTC constitutes ''do[ing] business in this state'' for the purposes of NRS 611.030(2).

---

[4]*Latterner v. Latterner,* 51 Nev. 285, 290, 274 P. 194, 195 (1929).

[5]NRS 611.030 states:

> 1. A person shall not open, keep, operate or maintain an employment agency in this state without first obtaining a license therefor as provided in NRS 611.020 to 611.320, inclusive, from the Labor Commissioner.
>
> 2. No employment agency may solicit any employer in this state and refer or place any person for employment with such employer or otherwise do business in this state unless such employment agency has

RTTC urges this court to conclude that Pinsker was "doing business" in Nevada since the agreement was signed in Nevada and the hiring of the employees occurred in Nevada. Alternatively, RTTC argues that Pinsker had no standing to bring a collection action, since Pinsker had not qualified and filed as a foreign corporation doing business in Nevada as required by NRS 80.055.

The issue of whether or not Pinsker's single transaction is considered "do[ing] business" under NRS 611.030(2) is an issue of first impression. The most instructive case law and statutory language involve Nevada's foreign corporation statutes, NRS Chapter 80, also at issue here.

Under NRS 80.015(1)(m), "[t]ransacting business in interstate commerce" does not constitute doing business in this state, since states may not impose filing requirements in a way that will interfere with federal regulation of interstate commerce.[6]

This court has held that transacting "a single piece of business in the state is not 'doing business' in the sense contemplated by the [foreign corporation] statute.'"[7] In determining whether a company is "doing business" in Nevada, this court has used a two-pronged test as set forth in *Sierra Glass & Mirror v. Viking Industries*.[8] The court first looks to the *nature* of the company's business functions in the state and then to the *quantity* of business it conducts in the state.[9] In *Sierra Glass,* an Oregon corporation maintained one sales representative in Nevada, who took orders locally and then remitted the orders and payments to the Oregon corporation. The Nevada sales comprised about one-seventh of the corporation's total sales volume. This court determined that the nature of the

obtained a license from the Labor Commissioner under the provisions of NRS 611.045.

3. Any person who opens, keeps, operates or maintains an employment agency without first procuring a license is guilty of a misdemeanor.

[6]*Sierra Glass & Mirror v. Viking Industries,* 107 Nev. 119, 121, 808 P.2d 512, 513 (1991) (citing *Robbins v. Shelby Taxing District,* 120 U.S. 489 (1886)).

[7]*Pacific States Sec. Co. v. District Court,* 48 Nev. 53, 57, 226 P. 1106, 1107 (1924) ("[I]t may be laid down as a general rule that the action of a foreign corporation in entering into one contract or transacting an isolated business act in the state does not ordinarily constitute 'the carrying on or doing of business' therein.").

[8]*Sierra Glass,* 107 Nev. at 122, 808 P.2d at 513 (citing *Eli Lilly & Co. v. Sav-On Drugs,* 366 U.S. 276 (1961)).

[9]*Id.*

Oregon corporation's business was predominantly interstate rather than intrastate, but the quantity of business done in Nevada was substantial. Ultimately, although acknowledging that the issue was extremely close, this court concluded that the Oregon corporation's business in Nevada had not taken on an "intrastate quality."[10] Thus, the Oregon corporation was not required to comply with Nevada's foreign corporation laws before filing an action in Nevada.[11]

In this instance, Pinsker was transacting business in interstate commerce. Pinsker was incorporated in California, and it sought and identified the eventual employees hired by RTTC in California. Pinsker maintained no offices in Nevada and did not solicit Nevada employers. Therefore, Pinsker was not required to qualify and file under Nevada's foreign corporation statutes to be eligible to bring suit for collection against RTTC.

The foreign corporations statutes specifically disavow their applicability to "any other provision of law."[12] Nevertheless, the two-prong test utilized by this court in *Sierra Glass* is instructive in determining whether Pinsker was "doing business in this state" for the employment agency statutes at issue. As noted above, Pinsker's business functions in this state were limited to meeting with RTTC and signing the agreement. Pinsker actually conducted most, if not all, of the actual search for potential executives in California. Even the two executives identified by Pinsker and subsequently hired by RTTC were California natives. Neither the nature nor the quantity of business conducted by Pinsker in Nevada rises to the level necessary to be considered "do[ing] business in this state" under NRS 611.030(2). Accordingly, Pinsker's lack of an employment agency license does not render the recruitment agreement unenforceable.

*Attorney fees*

An award of attorney fees lies within the district court's discretion,[13] but a court may not award attorney fees absent authority under a specific rule or statute.[14] Both NRCP 68 and NRS 17.115

---

[10]*Id.* at 125, 808 P.2d at 515.

[11]*Id.*

[12]NRS 80.015(4)(b).

[13]*Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 993, 860 P.2d 720, 722 (1993).

[14]*State, Dep't of Human Resources v. Fowler,* 109 Nev. 782, 784, 858 P.2d 375, 376 (1993).

allow for an award of attorney fees to a party that makes an offer of judgment that is refused by the other party, and then subsequently obtains a more favorable judgment.[15] Here, the district court cited NRCP 68 in its award of attorney fees to Pinsker.

An offer of judgment must specify the statute or rule that provides for the costs or fees sought by the offeror.[16] In addition, when exercising discretion to award attorney fees based on such an offer, a court must consider the four factors articulated in *Beattie v. Thomas*:[17]

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

In *Yamaha Motor Co. v. Arnoult*,[18] this court concluded that when the defendant is the offeree instead of the offeror, the first factor should be whether the defendant's claims or defenses were litigated in good faith.[19]

Prior to 1998, joint unapportioned offers of judgment were invalid for an award of attorney fees under both NRCP 68 and NRS 17.115.[20] However, NRCP 68 was amended in 1998 and NRS

---

[15]NRCP 68(f)(2) ("[T]he offeree shall pay the offeror's post-offer costs, applicable interest . . . and reasonable attorney's fees.").

[16]*MRO Communications v. American Tel. & Tel. Co.,* 197 F.3d 1276, 1282 (9th Cir. 1999); *Ramadanis v. Stupak,* 104 Nev. 57, 59-60, 752 P.2d 767, 768 (1988).

[17]99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983).

[18]114 Nev. 233, 955 P.2d 661 (1998).

[19]*Id.* at 252, 955 P.2d at 673.

[20]*Yada v. Simpson,* 112 Nev. 254, 258, 913 P.2d 1261, 1263 (1996) (plaintiff's unapportioned offer to multiple defendants invalid to support award of attorney fees); *Morgan v. Demille,* 106 Nev. 671, 674, 799 P.2d 561, 563 (1990) (unapportioned offer from multiple plaintiffs to sole defendant invalid to support award of attorney fees); *Ramadanis,* 104 Nev. at 59, 752 P.2d at 768 (defendant's unapportioned offer to multiple plaintiffs, here a corporation and its principal, invalid to support award of attorney fees); *Uniroyal Goodrich Tire v. Mercer,* 111 Nev. 318, 322-23, 890 P.2d 785, 788-89 (1995) (plaintiff's unapportioned offer to multiple defendants valid to support award of attorney fees, since defendants had stipulated in advance which entity would pay any judgment, therefore no separate liability or basis of liability between defendants, and counsel for joint defendants could appropriately assess risk of refusing offer).

17.115 was amended in 1999[21] to permit an award of fees when there has been an unapportioned offer of judgment, under certain circumstances.[22]

NRCP 68(c)(2) now reads, in pertinent part, as follows:

> **(2) Offers to Multiple Defendants.** An offer made to multiple defendants will invoke the penalties of this rule only if (A) there is a single common theory of liability against all the offeree defendants, such as where the liability of some is entirely derivative of the others or where the liability of all is derivative of common acts by another, and (B) the same entity, person or group is authorized to decide whether to settle the claims against the offerees.

The conditions under which joint unapportioned offers of judgment are sufficient to allow for an award of attorney fees under NRCP 68 and NRS 17.115 are almost identical. Both the rule and the statute call for either a single theory of liability or derivative liability for all, and both call for the same person or entity to be able to make the decision of whether or not to settle. These conditions help to accomplish the purpose of both the statute and the rule, which is to encourage settlement,[23] and they serve to assuage the concerns that joint unapportioned offers of judgment do not encourage settlement,[24] since such offers are only allowed in circumstances where that purpose can be served.

It is undisputed here that Pinsker obtained a more favorable judgment than its offer of judgment and that the district court properly cited appropriate authority in the award. RTTC argues, however, that the district court improperly applied the *Beattie* factors and that the unapportioned offer of judgment was insufficient to support an award.

---

[21]A review of the minutes of the Assembly Committee on Judiciary, May 6 and 11, 1999, shows that NRS 17.115 was amended "to make it consistent with Nevada Rules of Civil Procedure 68."

[22]NRCP 68 (replaced, effective October 27, 1998); 1999 Nev. Stat., ch. 258, §§ 1-3, at 1102-05 (amending NRS 17.115 as of May 24, 1999).

[23]*Beattie,* 99 Nev. at 588, 668 P.2d at 274; *Dillard Department Stores v. Beckwith,* 115 Nev. 372, 382, 989 P.2d 882, 888 (1999) ("The purpose of NRS 17.115 and NRCP 68 is to save time and money for the court system, the parties and the taxpayers. They reward a party who makes a reasonable offer and punish the party who refuses to accept such an offer." (citing *Muije v. A North Las Vegas Cab Co.,* 106 Nev. 664, 667, 799 P.2d 559, 561 (1990))).

[24]*Yada,* 112 Nev. at 258, 913 P.2d at 1263 ("[A] single plaintiff's offer of judgment . . . not apportioned among multiple defendants . . . does not serve to encourage settlement since the individual defendants are unable to determine their share of a joint offer and make a meaningful choice between accepting the offer or continuing to litigate.").

In the district court's order awarding fees, all four *Beattie* factors are mentioned, as well as the additional factor from *Yamaha*.[25] Additionally, there is ample support in the record to support the district court's findings that both Pinsker's claim and offer of judgment were brought in good faith, that RTTC had a meritorious defense and acted in good faith in rejecting Pinsker's offer, and that the requested attorney fees were reasonable and justified. We find no abuse of discretion in the district court's analysis of the *Beattie* factors.

The district court, in the order granting the motion for attorney fees, stated that there was a single theory of liability against all three defendants. This statement was based on the court's finding that Pinsker made "two claims for relief, both arising from [its] service in procuring a management employee. Both of these claims were directed at all defendants, but only one defendant would have been responsible for the judgment." The district court also found that the defendants had a unity of interest, "apparent from the fact that defendants were jointly represented in this matter by one law firm."

With respect to a single theory of liability, ample evidence in the record supports Rowe's liability only as an agent of RTTC. Redundant Networks, Inc., is mentioned in the original complaint and in the pleadings on the defendants' motion to dismiss as successor in interest to RTTC. In RTTC's motion for summary judgment, RTTC admits that "if an obligation to pay the commission exists here it is the obligation of RTTC only."

With respect to unity of interest, evidence in the record reveals that joint counsel for the three original defendants admitted that RTTC would be liable for any judgment rendered. From this the district court could reasonably conclude that RTTC was solely authorized to make the decision of whether or not to settle.

Thus, substantial evidence supports the district court's finding of unity of interest and a single theory of liability, and the district court did not abuse its discretion as to the attorney fees award. Accordingly, we affirm the award of the district court.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court and its order awarding attorney fees.

BECKER, C. J., ROSE, MAUPIN, GIBBONS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[25]*Uniroyal Goodrich Tire,* 111 Nev. at 322-23, 890 P.2d at 789 (*Beattie* factors should have express written support in decision, but award is proper if the record makes clear that the trial court considered the factors; unless evaluation of the factors is arbitrary or capricious, they will not be disturbed).