THE STATE OF NEVADA, on Relation of its DEPARTMENT OF HIGHWAYS, Appellant, v. NEVADA AGGREGATES AND ASPHALT COMPANY, et al., Respondents.

No. 7981

June 23, 1976          551 P.2d 1095

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Robert List,* Attorney General, and *Melvin L. Beauchamp,* Deputy Attorney General, Carson City, for Appellant.

*Robert L. VanWagoner,* Reno City Attorney, *Vargas, Bartlett & Dixon,* and *James S. Beasley,* of Reno, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

In pursuance of a plan to widen and extend certain streets and highways in Washoe County, Nevada, the State of Nevada Department of Highways instituted a condemnation action against Nevada Aggregates and Asphalt Company in August of 1972. Nevada Aggregates owned a parcel of land consisting of 157.1 acres of land, a portion of which was situated in the path of the proposed improvements. Approximately 25 acres of the land were condemned in fee simple and a slope easement was condemned across an additional six acres. The bulk of the condemned property and the only portion which concerned us here was used for mining sand and gravel.

At trial, each party presented expert testimony calculated to assist the jury in arriving at a fair valuation of the condemned land. Estimates of the value of the mineable property ranged from $140,640.00 to $1,417,966.00. Final appraisals of the value of the condemned property as a whole ranged from $686,000.00 to $2,203,175.00.[1] The jury ultimately returned a verdict of $1,858,100.00 and judgment was entered accordingly. This appeal followed.

1.   It has been held that, when there is no evidence in the record that the land in question is suitable or naturally adapted for use, or uses, other than that to which it was applied at the time of the taking, an owner may not present evidence that he intended to put property to some specific use which would have produced a certain amount of income and that as a result of

---

[1]The appraisals referred to here are only those that were prepared by MAI appraisers. A representative of Nevada Aggregates, testifying as an owner of the property, valued it at $2,488,590.00.

the condemnation, he has been damaged in the amount of the prospective income he allegedly has been deprived; and, under such circumstances, that a jury may not consider, as a basis for awarding damages, the fact that the owner has been prohibited from putting his property to some intended use by reason of its condemnation. See, e.g., State v. Tibbles, 123 N.E.2d 170 (Ind. 1954).

Quite understandably, in the absence of such evidence, such damages are considered too speculative to provide a reasonable guide for the ascertainment of present fair market value. Empire Dist. Electric Co. v. Johnston, 268 S.W.2d 78 (Mo. App. 1954). Cf. Tacchino v. State ex rel. Dep't of Hwys., 89 Nev. 150, 508 P.2d 1212 (1975).

Here, the evidence presented at trial included a plan by Nevada Aggregates to mine its property in three phases. The property was divided into three sections, each to be mined in turn. Before proceeding from one section to another, all of the minerals which could be economically extracted were to be removed from the former section. Prior to the commencement of these proceedings, Nevada Aggregates implemented this plan and by August of 1972 (when the complaint was filed) the company was fully engaged in the task of extracting the minerals from the first designated area. It so happened that the area first to be mined was also the area condemned by the state.

The state contends that one of respondent's expert witnesses improperly considered the plan and based his appraisal of the fair market value of the property thereon. Concomitantly, it is claimed that the jury should not have been permitted to consider the appraisal. Appellant's primary objection to the plan was that it envisioned only a 5½ years supply of minerals within the condemned area at the rate it presently was being mined. The state contended that all of respondent's mineable property should have been included in calculating the depletion period irrespective of any plan that Nevada Aggregates may have been following. If the 11 to 17 years depletion period advocated by the state had been employed instead of the 5½ years period, a lower value would have been attributed to the minerals within the condemned area.

There is a significant distinction between the cases referred to by appellant which condemn the practice of considering damages resulting from frustration of intended use and the

instant case. Contrary to the existent circumstances in the cases relied upon by appellant, we are not here concerned with a plan or intended use which had not yet been developed to fruition. Here, the plan was in effect at the time of the condemnation and income was being realized as a result of it. Respondent had determined to mine the area later condemned by the state before mining other areas of its property and had committed the necessary resources to implement that decision. The plan was not a fantasy of the landowner which had not been reduced to tangible returns but was a reality. There was no need to speculate as to the amount of income the plan would produce. Under such circumstances, the rationale behind the rule prohibiting consideration of intended use obviously does not apply. Cf. United States ex rel. Tennessee Valley Authority v. Powelson, 138 F.2d 343 (4th Cir. 1943); State v. Goodwyn, 133 So.2d 375 (Ala. 1961); In Re Ford, 263 N.Y.S.2d 831 (Sup.Ct.App.Div. 1965).

2. Jack McDonald was president of Centex Aggregates which was a general partner in the Nevada Aggregates operation. At trial, he was permitted to testify as an owner of the property and to present the jury with his appraisal of the value thereof. Dep't of Hwys. v. Wells Cargo, Inc., 82 Nev. 82, 85, 411 P.2d 120, 122 (1966). During cross-examination, he stated that his appraisal was reached by multiplying the estimated number of tons of aggregate in the condemned area by a specific price per ton.[2] Appellant argues that McDonald employed the forbidden "price-unit" formula in estimating the fair market value of the mineable property and that the subsequent denial by the trial court of its motion to strike McDonald's appraisal constituted prejudicial error.

Uniformly, the courts have condemned the price-unit formula as a basis for determining fair market value of condemned property. See, e.g., United States ex rel. Tennessee

---

[2]The following colloquy constitutes the extent of the objectionable testimony:

"Q. [Respondent's trial counsel] Now, I don't recall whether you gave us a royalty breakout which you considered in your valuation of the tonnage.

A. [Jack McDonald] If I didn't I consider the cash value of thirty-one cents a ton.

Q. Thirty-one cents a ton?

A. As of August, 1972.

Q. All right. Did you multiply your total tonnage in the State take by thirty-one cents a ton to arrive at your opinion of value?

A. Yes, I did."

Valley Authority v. Indian Creek Marble Co., 40 F.Supp. 811 (E.D. Tenn. 1941). It is recognized that a fair estimation of value cannot be reached simply by multiplying the unit market price of a given mineral by the estimated quantity thereof contained in the condemned land. Many other factors need be considered before fair value can be attached to the mineral bearing property. But, where the product of the price-unit formula is considered only as one of such factors, no prejudicial error results. State v. Nunes, 379 P.2d 579 (Ore. 1963). Where other factors are not considered and the valuation placed on the property is simply a product of the price-unit formula and nothing more, a persuasive argument for prejudicial error can be made. Such is not the case here.

The valuation placed on the property by McDonald was not simply a product of the price-unit formula. In arriving at his appraisal, McDonald testified that he considered such factors as: (1) Location of the property, (2) transportation facilities, (3) ability to provide large quantities of aggregate on short notice and within a concentrated time frame, (4) variety of aggregate found at the site, (5) capital investment necessary to provide a broad spectrum of products, and (6) historical performance and quality of the product.

Because these many factors were considered by McDonald in computing his appraisal of the value of the mineable property, his appraisal did not offend the principle set forth in the cases relied upon by appellant. United States v. Land in Dry Bed of Rosamond Lake, Cal., 143 F.Supp. 314 (S.D. Cal. 1956); Comstock v. Iowa State Highway Comm'n., 121 N.W. 2d 205 (Iowa 1963); State v. Mottman Mercantile Co., 321 P.2d 912 (Wash. 1958).

Moreover, the ultimate question is not whether McDonald applied an improper formula but whether the jury did. See Townsend v. Mid-America Pipeline Co., 168 N.W.2d 30 (Iowa 1969). In this regard, it is observed that the members of the jury were specifically instructed not to utilize the price-unit formula in calculating the fair market value of the property. There is no indication that the jury ignored the admonition which stated as follows:

"You are not to attempt to compute the fair market value of the mineable property by multiplying any volume figures of material in place testified to in this case by any unit price per ton. The quantity and quality of such gravel can be considered by you only in relation to the value, if any, that the presence

of such deposits contribute to the fair market value of the land as a whole."

3. As a final assignment of error, appellant contends that the trial court improperly granted respondent's motion *in limine* to exclude evidence pertaining to the value assigned to the subject property for depletion tax purposes at the time it was acquired six years prior to the commencement of these proceedings. The trial court ruled the evidence irrelevant as being too remote in time and granted the motion. We affirm that ruling.

The trial court is vested with broad discretion in determining the admissibility of evidence. Tucker v. Lower, 434 P.2d 320 (Kan. 1967); Carter v. Moberly, 501 P.2d 1276 (Ore. 1972). The exercise of such discretion will not be interfered with on appeal in the absence of a showing of palpable abuse. Carpenson v. Najarian, 62 Cal.Rptr. 687 (Cal.App. 1967). The court's determination in the instant case finds strong support in the case law and will not be upset here. El Paso Electric Co. v. Landers, 479 P.2d 769 (N.M. 1971); State Highway Comm'n. v. Jones, 391 P.2d 625 (Ore. 1964); State Road Comm'n. v. Hopkins, 506 P.2d 57 (Utah 1973).

Not at all are we persuaded by appellant's argument that the evidence was admissible as an admission against interest or for purposes of impeachment. The claim that the evidence constituted an admission may circumvent the proscription of the hearsay rule but does not cure its irrelevancy. As to the claim that the evidence was admissible for impeachment purposes, nowhere in the record does it appear that Nevada Aggregates assigned any greater or lesser value to the property in 1966 than that which appellant sought to have admitted into evidence. The inquiry below was directed at ascertaining the present value of the property, not its value six years previously. In short, since all of the evidence presented below related to the present value of the property, a value placed on the property six years previously could not possibly constitute impeachment evidence.

For the foregoing reasons, we affirm the judgment of the lower court.

Affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.