137 Nev., Advance Opinion 23

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO T.M.R., A MINOR UNDER 18 YEARS OF AGE.

No. 81032

MARCUS STEVEN H.,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT OF FAMILY SERVICES; AND T.M.R., A MINOR,
Respondents.

FILED

MAY 27 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order terminating parental rights as to a minor child. Eighth Judicial District Court, Family Division, Clark County; Robert Teuton, Judge.

*Affirmed.*

Karen A. Connolly, Ltd., and Karen A. Connolly, Las Vegas,
for Appellant.

Steven B. Wolfson, District Attorney, and Felicia R. Quinlan, Deputy District Attorney, Clark County,
for Respondent State of Nevada Department of Family Services.

Legal Aid Center of Southern Nevada, Inc., and Patrick M. Hirsch, Las Vegas,
for Respondent T.M.R.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

The termination of parental rights in a civil case is akin to the death penalty in a criminal case. In these cases no less than in other civil cases, it is of the utmost importance that the State comply with the rules of procedure. Thus, in parental rights cases, the State must follow procedural rules involving the disclosure of trial witnesses prior to trial.

Here, the State sought to terminate appellant's parental rights, and the case proceeded to trial. The State did not disclose a nonexpert witness until after the trial had commenced. Nevertheless, the district court allowed the witness to testify at trial, concluding that the nonexpert witness disclosure requirements in NRCP 16.2(e)(4)[1] do not apply to termination of parental rights proceedings. At the conclusion of trial, the district court terminated appellant's parental rights.

---

[1]NRCP 16.2(e)(4) provides for the pretrial disclosure of nonexpert witnesses:

> **Nonexpert Witness.** A party must disclose the name and, if known, the address and telephone number of each individual who has information or knowledge relevant to the value of assets or debts or to the claims or defenses set forth in the pleadings, or who may be called as a witness, at any stage of the proceedings, including for impeachment or rebuttal, identifying the subjects of the information and a brief description of the testimony for which the individual may be called. Absent a court order or written stipulation of the parties, a party must not be allowed to call a witness at trial who has not been disclosed at least 45 days before trial.

(O) 1947A

In this opinion, we conclude that the nonexpert witness notice requirements in NRCP 16.2 apply to termination of parental rights proceedings. Although ambiguous when viewed in isolation, when read "in pari materia," it is clear that NRCP 16.1, 16.2, and 16.205 were intended to work together to cover the entire range of civil proceedings, including termination of parental rights proceedings. Indeed, reading these rules otherwise would produce an absurd result, permitting trial by ambush despite the profound interests at stake in such proceedings. We therefore hold the district court's failure to apply NRCP 16.2(e)(4)'s mandate regarding disclosure of witnesses was error. We conclude, however, that the error was harmless in this instance, as substantial evidence supports the district court's order terminating appellant's parental rights. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

Appellant Marcus H. and Dana B. are respondent T.M.R.'s birth parents. While T.M.R. was an infant, Marcus and Dana lived with Dana's 100-year-old great-grandmother, Gladys S. During a fight between Marcus and Dana, Marcus hit Gladys in the face and damaged her home. As a result of this incident, several charges were filed. Marcus ultimately pleaded guilty to felony coercion and was sentenced to a minimum of 24 months and a maximum of 60 months in prison.

Meanwhile, Dana was arrested for driving while under the influence, while texting on a cell phone, without a driver's license, and with T.M.R. improperly restrained in the vehicle. Because both parents were incarcerated, the Department of Family Services (DFS) placed T.M.R. into protective custody and later placed him with a foster family. A caseworker began talking to Marcus about reunification with T.M.R. and created a formal case plan requiring Marcus to complete treatments for anger

SUPREME COURT
OF
NEVADA

(O) 1947A

management, drug addiction, and domestic violence, as well as regular assessments regarding domestic violence.

Thereafter, DFS petitioned to terminate Marcus's and Dana's parental rights. At the time of trial, T.M.R. was three years old and had been in foster care for over a year.[2] Marcus, his DFS caseworker, and T.M.R.'s foster mother each testified. While Marcus admitted to prior drug-related convictions, Marcus denied having a substance abuse issue and blamed his relapses on Dana's drug use. Marcus also testified that he was not an angry person and had never before been in trouble for violent behavior. When asked about the incident with Gladys, Marcus testified that Gladys blocked his path, threw a bowl of milk in his face, and yelled at him to hit her in an effort to get him arrested.

Marcus's DFS caseworker testified that she created a case plan addressing his violent behavior and substance abuse. She testified that although Marcus was not in custody prior to sentencing in his felony case, he had not made timely progress on his case plan. Instead, during the time that Marcus was out of custody, he tested positive on one drug test and refused to submit to multiple other drug tests, all while minimizing his bad behaviors. T.M.R.'s foster mother testified that T.M.R. exhibited aggressive behaviors around and towards her (but not around or towards his foster father) when he first joined their family, and these behaviors reoccurred whenever T.M.R. returned from visiting his parents. The foster mother added that T.M.R.'s behavior had greatly improved with time and therapy. She further testified that T.M.R. did not recognize Marcus when they spoke

---

[2]Although the trial involved termination of both Marcus's and Dana's parental rights, this opinion addresses only the proceedings regarding Marcus.

SUPREME COURT
OF
NEVADA

(O) 1947A

on the telephone. Importantly, she stated that T.M.R. had bonded with his foster family, and they wanted to adopt him.

At the close of the first day of trial, the parties discussed the State's request to admit a transcript of Gladys's testimony, taken during the State's criminal case against Marcus, about the altercation with Marcus. Marcus objected to admission of the transcript. The district court declined to rule on the issue at that time and continued the trial. Prior to trial resuming, the State filed a notice naming Gladys as a witness. Marcus filed a motion in limine to exclude Gladys on the grounds that she was not timely disclosed pursuant to NRCP 16.2. The district court denied Marcus's motion, concluding NRCP 16.2's nonexpert witness disclosure requirements do not apply to termination of parental rights proceedings. The court further determined that although the State improperly noticed Gladys's prior criminal testimony as an exhibit, Marcus had "sufficient notice." Thereafter, Gladys testified about the altercation with Marcus.

At the conclusion of trial, the district court terminated Marcus's parental rights. The court concluded that termination was in T.M.R.'s best interests and that parental fault existed because T.M.R. had been out of the home for more than 14 months, seen significant behavioral improvements, and bonded with his foster family, and because Marcus had engaged in only "token efforts to avoid being [an] unfit parent or to eliminate the risk of serious physical, mental or emotional injury" to T.M.R., who faced a serious risk of physical, mental, or emotional injury if returned to Marcus's care, and failed to adjust his behavior or substantially comply with his case plan.

*DISCUSSION*

Marcus appeals, arguing that the district court erred by denying his motion in limine to exclude Gladys's testimony and that the

Supreme Court
OF
Nevada

(O) 1947A

5

court's decision to terminate his parental rights is not supported by substantial evidence.

The purpose of Nevada's termination of parental rights statute is to protect the child's welfare, not punish parents. *In re Parental Rights as to A.L.*, 130 Nev. 914, 918, 337 P.3d 758, 761 (2014). Nevertheless, we recognize that terminating parental rights is "tantamount to imposition of a civil death penalty," and we therefore closely scrutinize the district court's decision to terminate parental rights. *Id.* (internal quotation marks omitted). We first address whether the district court erred by failing to apply NRCP 16.2's witness disclosure requirement to Marcus's termination of parental rights proceeding before considering whether reversal is warranted.

*NRCP 16.2's witness disclosure requirements apply to termination of parental rights proceedings*

Generally, we review the district court's decision to grant or deny a motion in limine to exclude evidence for an abuse of discretion. *State ex rel. Dep't of Highways v. Nev. Aggregates & Asphalt Co.*, 92 Nev. 370, 376, 551 P.2d 1095, 1098 (1976). However, the district court's interpretation of a statute or rule presents a question of law that we review de novo. *See Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014).

Termination of parental rights proceedings are governed by the Nevada Rules of Civil Procedure. NRS 128.090(2). But the rules fail to clearly account for disclosure requirements in such proceedings. NRS 3.223(1)(a) establishes that "the family court has original, exclusive jurisdiction" in proceedings brought pursuant to NRS Chapter 128, which governs the termination of parental rights. Actions under the exclusive jurisdiction of the family court are exempt from NRCP 16.1's initial disclosure requirements. NRCP 16.1(a)(1)(B)(i). The drafters of this rule

indicated that "[f]amily law actions are subject to the mandatory disclosure requirements of Rule 16.2 and Rule 16.205." *See* NRCP 16.1, Advisory Committee Note—2019 Amendment. However, while NRCP 16.2 is titled "Mandatory Prejudgment Discovery Requirements in Family Law Actions" (subject to exceptions not at issue here), its text lists specific areas of family law and does not include termination of parental rights actions:

> (a) **Applicability.** This rule replaces Rule 16.1 in all divorce, annulment, separate maintenance, and dissolution of domestic partnership actions. Nothing in this rule precludes a party from conducting discovery under any other of these rules.

Similarly, NRCP 16.205 "replaces [NRCP] 16.1 and 16.2 in all paternity and custody actions between unmarried parties," but does not expressly apply to termination of parental rights actions. NRCP 16.205(a). In sum, it is unclear which rule applies to termination of parental rights actions.

To resolve this ambiguity, we read these rules "in pari materia." Rules are "in pari materia" where "they involve the same classes of persons or things or seek to accomplish the same purpose or object." *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000) (interpreting NRS 687B.385). Interpreted "in pari materia," NRCP 16.1, 16.2, and 16.205 "must be read and construed together, and so harmonized as to give effect to [each of] them . . . ." *Presson v. Presson*, 38 Nev. 203, 208, 147 P. 1081, 1082 (1915).

Here, NRCP 16.1, 16.2, and 16.205 collectively provide witness disclosure requirements for civil proceedings. NRCP 16.1 governs most civil proceedings but not family law proceedings, and NRCP 16.2 and 16.205 cover family law proceedings. Neither NRCP 16.1 nor NRCP 16.205 directly governs here, however, as NRCP 16.1 exempts termination of parental

rights actions from its purview, and NRCP 16.205 applies narrowly to paternity and custody actions between unmarried persons. Although arguably imprecise when viewed granularly, the unmistakable thrust of NRCP 16.1, 16.2, and 16.205, read together, is to broadly cover the gamut of civil proceedings. It follows that NRCP 16.2 must apply to termination proceedings to the extent practicable.

Pertinent here, we conclude that when read "in pari materia," NRCP 16.2(e)(4)'s witness disclosure requirement applies to termination of parental rights trials.[3] In reaching this conclusion, we note that separately construing NRCP 16.1, 16.2, and 16.205 in a vacuum and concluding that no part of any of those rules applies to termination of parental rights trials would lead to an absurd result—that of enabling the State to ambush a parent during trial with a surprise witness. *See State v. Webster*, 102 Nev. 450, 453, 726 P.2d 831, 833 (1986) ("[S]tatutory construction should always avoid an absurd result."); *cf. Turner v. State*, 136 Nev., Adv. Op. 62, 473 P.3d 438, 447 (2020) (addressing trial by ambush). Such a result would also frustrate the goals of the statutory scheme established in NRS Chapter 128. *See In re Parental Rights as to C.C.A.*, 128 Nev. 166, 169, 273 P.3d 852, 854 (2012) (noting that "to guard the rights of the parent and the child, the Nevada Legislature has created a statutory scheme intended to assure that parental rights are not erroneously terminated and that the child's needs

---

[3]We clarify that NRCP 16.2(e)(4) applies where a termination of parental rights petition proceeds to trial and that it requires a party to disclose witnesses 45 days prior to trial. We acknowledge that not all of NRCP 16.2 applies to all termination of parental rights proceedings. In particular, we note NRCP 16.2(c), which requires financial disclosures, does not apply.

are protected"). Therefore, the district court erred by concluding that NRCP 16.2 does not apply in this situation.[4]

Despite the State filing a notice listing multiple trial witnesses and indicating its intent to admit Gladys's deposition testimony as an exhibit at trial, and despite its filing of an affidavit for service by publication for Gladys more than four months before trial, the State failed to *actually notice* Gladys as a witness for trial. The State's complete failure to notice Gladys as a witness contravened NRCP 16.2(e)(4).[5] This was improper, particularly given that Marcus faced termination of his parental rights—the equivalent of the civil death penalty. We therefore conclude that the district court abused its discretion by failing to exclude Gladys's testimony pursuant to NRCP 16.2.

Nevertheless, the error does not warrant reversal if it is harmless and did not affect Marcus's substantial rights. *See* NRCP 37(c)(1); NRCP 61. We therefore next consider whether, exclusive of Gladys's unnoticed testimony, substantial evidence supports the district court's termination of Marcus's parental rights.

*Substantial evidence supports the district court's termination of Marcus's parental rights despite the admission of Gladys's unnoticed testimony*

Marcus argues that substantial evidence does not support a finding of parental fault or that termination was in T.M.R.'s best interests, pointing to evidence in the record that is favorable to him. However, we do

---

[4]We are unpersuaded by the State's argument that NRCP 16.2's witness disclosure requirements conflict with NRS Chapter 432B.

[5]We note that the State failed to disclose any of its witnesses 45 days before trial began in accordance with NRCP 16.2(e)(4), but Marcus objected only to the State's failure to disclose Gladys. Therefore, we address only the State's failure to disclose Gladys.

not reweigh the evidence on appeal or substitute our judgment for the district court's, *see In re Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 763 (2006), and we "will uphold the district court's termination order when it is supported by substantial evidence." *C.C.A.*, 128 Nev. at 169, 273 P.3d at 854. Substantial evidence "is evidence that a reasonable person may accept as adequate to sustain a judgment." *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007).

"The primary consideration in any proceeding to terminate parental rights must be whether the best interests of the child will be served by the termination." NRS 128.105(1). Termination of parental rights must be based upon two findings: first, that it is in the child's best interests; and second, that parental fault exists. NRS 128.105(1)(a)-(b). Parental fault includes the failure of parental adjustment, mere token efforts to care for the child, and risk of injury to the child if he or she is returned to the parent. NRS 128.105(1)(b).

*Marcus failed to rebut the presumption that termination of his parental rights was in T.M.R.'s best interests*

When a child has resided outside of his or her home pursuant to a placement under NRS Chapter 432B "for 14 months of any 20 consecutive months, the best interests of the child must be presumed to be served by the termination of parental rights." NRS 128.109(2). To rebut this presumption, the parent must establish that termination is not in the child's best interests by a preponderance of the evidence. *In re J.D.N.*, 128 Nev. 462, 471, 283 P.3d 842, 848 (2012). To determine whether the parent has rebutted the presumption, courts consider (1) "[t]he services . . . offered to the parent . . . to facilitate a reunion with the child"; (2) "[t]he physical, mental or emotional condition and needs of the child"; (3) "[t]he effort the parent . . . made to adjust their circumstances, conduct or conditions to

make it in the child's best interests to return the child to his or her home after a reasonable length of time"; and (4) "[w]hether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent . . . within a predictable period." NRS 128.107; *see also J.D.N.*, 128 Nev. at 474, 283 P.3d at 850 ("When the petitioner has demonstrated that NRS 128.109's presumptions apply, the burden to present evidence regarding NRS 128.107's factors lies with the parent."). "[R]egular visitation or other contact with the child which was designed and carried out in a plan to reunite the child with the parent" can indicate the parent made the requisite effort to adjust their circumstances. NRS 128.107(3)(b). Additionally, "[i]f the child was placed in a foster home, the district court must consider whether the child has become integrated into the foster family and the family's willingness to be a permanent placement." *Matter of S.L.*, 134 Nev. 490, 497, 422 P.3d 1253, 1259 (2018); *see* NRS 128.108 (imposing additional considerations where the child is living in a foster home).

Here, the presumption in favor of termination of Marcus's parental rights applies because T.M.R. was placed in a foster home and lived outside Marcus's home for over 14 months. Therefore, the burden shifted to Marcus to rebut the presumption. The child's needs "for proper physical, mental and emotional growth and development are the decisive considerations in proceedings for termination of parental rights." NRS 128.005(2)(c). The record shows that Marcus's home environment was chaotic and that T.M.R.'s behavior improved after DFS placed him with his foster family. T.M.R. bonded with his foster family, who wanted to adopt him, and he did not recognize Marcus while talking to him on the telephone. Moreover, Marcus's testimony shows he was unable to provide for T.M.R.'s

needs within a reasonable amount of time. He admitted to being in prison following an altercation with Gladys, and he testified he was ineligible for parole until over three years after T.M.R. was placed into protective custody.

Further, the record supports the district court's conclusion that when Marcus was not in custody prior to sentencing, he failed to adjust his conduct and behavior to make a safe environment for T.M.R.: Marcus minimized his illicit drug use, considered Dana's illicit drug use to be more serious than his own, blamed her for his relapses, and refused to take drug tests requested by DFS. The record further shows that Marcus minimized his angry behavior and failed to show improvement in that area. Finally, Marcus did not timely comply with his case plan or make improvements as necessary to create a safe and stable environment for T.M.R. Therefore, we conclude that substantial evidence supports the district court's finding that Marcus failed to rebut the presumption in favor of termination and that termination of his parental rights was in T.M.R.'s best interests.

*The record supports the court's parental fault findings*

As noted, in addition to finding that the child's best interests would be served by terminating parental rights, the district court must find parental fault under at least one of the factors enumerated in NRS 128.105(1)(b). Relevant here, the district court may find parental fault if the parent demonstrates "[f]ailure of parental adjustment." NRS 128.105(1)(b)(4). Failure of parental adjustment occurs when a parent, within a reasonable time, is unwilling or unable to substantially correct the circumstances that led to the child being placed outside of the home. NRS 128.0126.

Here, Marcus began discussing the issues precluding T.M.R. from being returned to his care with his caseworkers six months before the

SUPREME COURT
OF
NEVADA

(O) 1947A

12

formal adoption of his case plan, yet when he was out of custody prior to sentencing, he failed to complete the domestic violence treatment required by his case plan.[6] Then, only after sentencing and incarceration did Marcus complete anger-management therapy. And at trial he refused to acknowledge that he had any anger issues. The testimony of Marcus and his caseworker indicates that Marcus refused to take responsibility for his altercation with Gladys, blaming her instead. Although Marcus attended substance abuse treatment, he did not believe he had an issue with controlled substances—even though at trial he admitted to "social use" of methamphetamine, admitted that he failed to submit numerous drug tests requested by DFS, and conceded that he relapsed into drug abuse. Importantly, Marcus blamed Dana for his drug abuse relapses instead of taking responsibility. Based on the foregoing, we conclude that substantial evidence supports the district court's finding of failure of parental adjustment.[7]

To be sure, the district court's improper admission of Gladys's unnoticed testimony placed Marcus in the difficult position of suddenly having to prepare for an unanticipated witness. We are confident, however, that the error was harmless given the substantial, if not overwhelming,

---

[6]To the extent Marcus argues that DFS failed to make reasonable efforts to promote reunification, we decline to address that argument, as Marcus raises it for the first time on appeal. See Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

[7]Because substantial evidence supports the district court's findings of failure of parental adjustment, we need not address whether the evidence also supports the district court's findings of risk of injury and token efforts. See In re Parental Rights as to K.D.L., 118 Nev. 737, 744-45, 58 P.3d 181, 186 (2002) (explaining that the district court must find that at least one of the factors in NRS 128.105 exists to support a finding of parental fault).

evidence supporting the district court's termination of Marcus's parental rights.[8]

## CONCLUSION

NRCP 16.2's nonexpert witness disclosure requirements apply to termination of parental rights cases. Thus, the district court erred by denying Marcus's motion in limine to exclude an unnoticed nonexpert witness during trial. The error was harmless, however, because substantial evidence supports terminating Marcus's parental rights, even without the witness's testimony. Therefore, we affirm the district court's order terminating Marcus's parental rights.

_____, J.
Silver

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

---

[8]We do not consider Marcus's argument that termination of his parental rights was fundamentally unfair and violated his due process rights, as Marcus failed to present a cogent argument supported by relevant authority. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).