# IN THE SUPREME COURT OF THE STATE OF NEVADA

VEGAS VALLEY GROWERS, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
MEDICINE MAN TECHNOLOGIES,
INC., A NEVADA CORPORATION,
Respondent.

VEGAS VALLEY GROWERS, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
MEDICINE MAN TECHNOLOGIES,
INC., A NEVADA CORPORATION,
Respondent.

No. 79700

**FILED**

JUL 23 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

No. 80989

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is a consolidated appeal from a district court judgment upon a jury verdict in a civil action and a post-judgment order regarding prejudgment and post-judgment interest. Eighth Judicial District Court, Clark County; Richard Scotti, Judge.

Appellant, Vegas Valley Growers, LLC (VVG), is a cannabis cultivation business in Nevada. Respondent, Medicine Man Technologies, Inc. (MMT), provides cannabis cultivators with its cultivation methodology to improve cannabis growth operations. VVG and MMT entered into a five-year contract (the Agreement) wherein MMT granted VVG a license to use its knowledge, skills, and experience in exchange for various fees.[1] The

---

[1]We do not recount the facts except as necessary for our disposition.

21-21276

Agreement provided that MMT would provide an onsite advisor to teach VVG's staff and implement the cultivation methodology. The Agreement also provided that VVG would pay a monthly "delta fee" based on a percentage of production that exceeded two pounds per grow light.

Prior to entering the Agreement, VVG chose to begin cultivating two cannabis strains named Karma and Grey Skull. After entering the Agreement and after the arrival of the onsite advisor, VVG and MMT began to dispute what was required under the contract. MMT believed that VVG owed delta fees for the cannabis produced over two pounds per light each harvest. VVG believed that it only owed money for "flower" and not "trim," that MMT was overcharging for the cannabis produced, and that there were quality issues with the cannabis produced by Karma and Grey Skull because they were "seeding."

MMT eventually sued for breach of contract, breach of the covenant of good faith and fair dealing, and conversion. VVG counterclaimed for breach of contract, breach of the covenant of good faith and fair dealing, and negligence. During litigation, the district court granted MMT's motion in limine, precluding VVG from eliciting testimony or presenting evidence that MMT was responsible for strain selection. The district court found that VVG had assumed the risk for its choice to cultivate the two strains and MMT had disclaimed responsibility for strain selection under Sections 6.3(a) and 9.3 of the Agreement. After a five-day jury trial, the jury returned a verdict for MMT and, as pertinent here, awarded MMT damages for the unpaid delta fees, which included 18 percent interest per the Agreement. The district court also awarded MMT post-judgment interest on the unpaid delta fees in the amount including interest. VVG appeals.

On appeal, VVG argues that the district court abused its discretion by excluding evidence based on the court's erroneous interpretation of the Agreement, the jury improperly awarded future damages for the unpaid delta fees based on gross profits, and the district court improperly awarded compound interest by awarding post-judgment interest on the unpaid delta fees, which already included prejudgment interest.

We first address whether the district court misinterpreted Sections 6.3(a) and 9.3 of the Agreement and thereafter improperly excluded evidence that MMT was responsible for making recommendations regarding strain selection. VVG argues that the district court prevented it from holding MMT accountable for breach of contract at trial by granting MMT's Motion in Limine No. 2.[2] VVG argues that sections 6.3(a) and 9.3 of the Agreement do not release MMT from its responsibility of recommending in favor of, or against, the use of certain strains or from recommending a methodology that benefited each strain. VVG contends that (1) MMT should have asked VVG whether VVG knew if the Karma and Grey Skull strains were genetically stable and could withstand the growing conditions MMT recommended; and (2) MMT further should have refrained from recommending cultivating methods that would stress those unstable

---

[2]VVG does not specify which of MMT's four motions in limine it contests. However, VVG quotes the district court's language in its order granting MMT's Motion in Limine No. 2, so we address that motion and order

strains, and/or only recommend that VVG cultivate known strains until the climate was stable.[3]

We review the district court's grant of a motion in limine for an abuse of discretion. *See State, Dept. of Highways v. Nev. Aggregates & Asphalt Co.*, 92 Nev. 370, 376, 551 P.2d 1095, 1098 (1976). We also review a district court's decision to admit or exclude evidence for an abuse of discretion. *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). However, we review questions of law, such as contract interpretation, de novo. *See Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015).

"The goal of contract interpretation is to 'discern the intent of the parties.'" *Nev. State Educ. Assoc. v. Clark Cty. Educ. Assoc.*, 137 Nev., Adv. Op. 8, 482 P.3d 665, 673 (2021) (quoting *MMAWC, LLC v. Zion Wood Obi Wan Tr.*, 135 Nev. 275, 279, 448 P.3d 568, 572 (2019)). When interpreting a contract, "[t]his court initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Soro*, 131 Nev. at 739, 359 P.3d at 106 (internal quotation marks omitted). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, but ambiguity does not arise simply because the parties disagree on how to interpret their contract." *Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 309, 301 P.3d 364,

---

[3]We do not address VVG's intended trial arguments that MMT failed to make proper recommendations for the improvement of the climate and cultivation methodology to maximize the overall improvement potential of the cultivation because VVG failed to raise them below. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

366 (2013) (internal citation omitted). "A court should not interpret a contract so as to make meaningless its provisions," and "[e]very word must be given effect if at all possible." *Bielar v. Washoe Health Sys., Inc.*, 129 Nev. 459, 465, 306 P.3d 360, 364 (2013) (internal quotation marks omitted) (quoting *Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998)).

Here, the district court precluded VVG from eliciting testimony or presenting evidence that MMT was responsible for advising VVG on strain selection based on Sections 6.3 and 9.3 of the Agreement. Section 6.3(a) states that VVG assumes all risk and liability regarding its use of any "Improvements" developed by VVG. The next sentence specifies that variations in productivity and yield will be part of VVG's "deployment determination in consideration of the various strains chosen." And the sentence after that states that MMT "makes no claim of specific performance related to such variables." Section 9.3 states that performance depended on variables not within MMT's control, such as strains cultivated. Additionally, Exhibit A to the Agreement details the specific data MMT agreed to provide, including information regarding the environment, climate, nutrients, and cultivation methodology. Exhibit A does not state that MMT will assist with choosing which strains to cultivate.

We conclude that Section 6.3(a) indicates that VVG assumes the risk for its own decisions and that MMT made no claims of performance related to strains chosen. Section 9.3 indicates that MMT stated that it had no control over which strains were cultivated. Together, Sections 6.3(a) and 9.3 indicate that MMT disclaimed responsibility for choosing which strains to propagate as well as specific results related to strain selection. Reading these sections with Exhibit A, the provision which describes the specific data MMT agreed to provide, indicates that MMT did not agree to provide

SUPREME COURT
OF
NEVADA

(0) 1947A

5

recommendations specific to strain selection. Therefore, we conclude the district court properly interpreted the Agreement as related to VVG's strain selection arguments and did not abuse its discretion by excluding evidence that MMT was responsible for strain selection at trial. On this point, we affirm.

We next address whether the jury improperly awarded future damages for the unpaid delta fees based on gross profits.[4] VVG argues the future damages award should have been based on net profits, taking into account any expenses MMT saved as a result of the breach of contract. VVG specifically points to the $10,000 per month onsite advisor fee, which MMT did not have to pay for the remainder of the contract. VVG failed to raise this argument below, so we review for plain error. *Bradley v. Romeo*, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986).

"The ability of this court to consider relevant issues *sua sponte* in order to prevent plain error is well established." *Id.* This court may consider plain error even in the absence of an objection if the error resulted in manifest injustice. *See Landmark Hotel & Casino, Inc. v. Moore*, 104 Nev. 297, 299-300, 757 P.2d 361, 362-63 (1988). An error is a miscarriage of justice where, after considering the record as a whole, it is probable a

---

[4]Because VVG specifically contests the future damages of unpaid delta fees, we confine our analysis to the expenses saved that relate to the delta fees. Additionally, we do not address VVG's argument that MMT is not entitled to any future damages because VVG relied on the unpublished, extra jurisdictional case *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-PAB-BNB, 2009 WL 579516 (D. Colo. Mar. 4, 2009), to support that argument. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting this court need not consider arguments not adequately briefed and not supported by relevant authority).

different outcome may have been reached but for the error. *Cook v. Sunrise Hosp. and Med. Ctr., LLC*, 124 Nev. 997, 1006, 194 P.3d 1214, 1219-20 (2008).

"This court will affirm a damages award that is supported by substantial evidence." *Wyeth v. Rowatt*, 126 Nev. 446, 470, 244 P.3d 765, 782 (2010). In a breach of contract action, "the expenses saved because of the wrongful act of the defendant must be subtracted from any recovery." *Jeaness v. Besnilian*, 101 Nev. 536, 540, 706 P.2d 143, 146 (1985). And "[w]here overhead expenses are saved as a result of a breach of contract, the proper measure of recovery is net, not gross, profit." *Covington Bros. v. Valley Plastering, Inc.*, 93 Nev. 355, 362, 566 P.2d 814, 818 (1977). "Where such expenses are constant, however, and no saving occurs, the rule is otherwise." *Id.* Further, "where no showing is made as to the cost of performing the remainder of a contract, it will be presumed that there was no cost." *Id.* at 363, 566 P.2d at 818. Therefore, where the defendant fails to offer evidence establishing "the fact or the amount of the savings[,]" this court will find no error in the district court's award of gross, rather than net, profits for damages. *See id.* at 363, 566 P.2d at 819.

Here, MMT's Chief Cultivation Officer, and creator of MMT's cultivation methodology, testified[5] that when VVG's delta fees exceeded $10,000 in one month, MMT would offset the $10,000 monthly fee for the onsite advisor. VVG contends that MMT saved this expense and it should have been deducted from the jury's award of delta fees. However, because the jury did not award MMT any damages for the onsite advisor fee, the award was in accord with the Agreement. Further, VVG did not argue at

---

[5]MMT's costs were not argued below, and this witness testified to this information in an unrelated context.

SUPREME COURT
OF
NEVADA

(O) 1947A

trial these were saved expenses nor did it present any evidence of MMT's operating expenses at trial, so we find no error in the award of gross profits. Finally, the jury's award of unpaid delta fees was derived from MMT's expert witness report and trial testimony, and is supported by substantial evidence. Therefore, we affirm the jury's award of future damages.

We finally consider whether the district court improperly awarded compound interest. VVG argues the district court violated Section 5.2 of the Agreement by awarding post-judgment interest on the unpaid delta fees because they already included prejudgment interest, thereby creating a compound interest award.[6] We agree.

We "review the award of interest upon a judgment for error." *Torres v. Goodyear Tire & Rubber Co.*, 130 Nev. 22, 25, 317 P.3d 828, 830 (2014). Nevada allows the district court to award post-judgment interest on prejudgment interest because the prejudgment interest is part of the overall amount. *Uniroyal Goodrich Tire v. Mercer*, 111 Nev. 318, 325, 890 P.2d 785, 790 (1995), *superseded on other grounds by statute as stated by RTTC Commc'ns, LLC v. Saratoga Flier, Inc.*, 121 Nev. 34, 41-42, 110 P.3d 24, 29 (2005); *State Drywall, Inc. v. Rhodes Design & Dev.*, 122 Nev. 111, 117, 127 P.3d 1082, 1086 (2006) ("[P]rejudgment interest should be calculated for 'all money' owed under the contract from the date it becomes due until the date it is paid or an offer of judgment is paid."). However, this is still a compound award. *Torres*, 130 Nev. at 25, 317 P.3d at 830 ("Compound interest is '[i]nterest paid on both the principal and the previously accumulated

_____

[6]We do not address VVG's argument that MMT is not entitled to any post-judgment interest on the unpaid delta fees because VVG not only failed to raise this argument below, but also acknowledged below that MMT was entitled to post-judgment interest on the principal amount of unpaid delta fees. *See Old Aztec Mine*, 97 Nev. at 52, 623 P.2d at 983.

SUPREME COURT
OF
NEVADA

(O) 1947A

interest.'"). "Compound interest is not favored by the law and is generally allowed only in the presence of a statute or an agreement between the parties allowing for compound interest." *Campbell v. Lake Terrace, Inc.*, 111 Nev. 1329, 1333, 905 P.2d 163, 165 (1995), *overruled on other grounds by Aviation Ventures, Inc. v. Joan Morris, Inc.*, 121 Nev. 113, 121, 110 P.3d 59, 64 (2005). "Interest is simple unless otherwise stated in a contract or statute." *Torres*, 130 Nev. at 27, 317 P.3d at 831; *see also Campbell*, 111 Nev. at 1334, 905 P.2d at 165 ("[U]nless an instrument specifically calls for compound interest, only simple interest will be allowed.").

Here, Section 5.2 of the Agreement does not provide for compound interest, and the parties do not cite a statute that allows for compound interest. Instead, the Agreement provides for an interest rate of 18 percent. Therefore, the Agreement and simple interest control, and the district court improperly awarded post-judgment interest on the amount of unpaid delta fees that included prejudgment interest. Accordingly, we ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court to properly compute post-judgment interest consistent with this order.[7]

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

---

[7]We have carefully considered the parties' remaining arguments, but we do not address them in light of our decision.

cc: Chief Judge, Eighth Judicial District Court
Eighth Judicial District Court, Department 2
Patrick N. Chapin, Settlement Judge
Reisman Sorokac
Marquis Aurbach Coffing
Eighth District Court Clerk